**Faith Y. MOFFE, Plaintiff,**

v.

**Kenneth S. APFEL, as Commissioner of the Social Security Administration, Defendant.**

No. 98–CV–6071.

United States District Court, W.D. New York.

Oct. 22, 1998.

Andrew M. Rothstein, Elmira, NY, for Plaintiff.

Brian M. McCarthy, Assistant U.S. Attorney, Rochester, NY, for Defendant.

## DECISION and ORDER

SIRAGUSA, District Judge.

### INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") that the plaintiff was not disabled, and therefore, was not entitled to disability benefits. This Court finds that the Commissioner's decision was not supported by substantial evidence and accordingly, remands the matter for further administrative proceedings.

### PROCEDURAL BACKGROUND

On March 24, 1995, the plaintiff, Faith Moffe ("Moffe"), applied for social security disability benefits, stating that she had been unable to work since September 9, 1994. The Social Security Administration ("SSA") denied her application initially in July of 1995, and upon reconsideration in November of 1995. The plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and such hearing was held on April 10, 1996. On August 6, 1996, the ALJ issued a decision in which he found that the plaintiff was not entitled to disability benefits. The plaintiff requested review of the ALJ's decision by the Appeals Council, which on February 13, 1998, issued a decision denying her application. The ALJ's determination thus became the Commissioner's Final Decision, and the plaintiff then commenced this action. Presently before the Court is the plaintiff's motion for summary judgment pursuant to Fed.R.Civ.P. 56 and the defendant's motion for judgment on the pleadings pursuant to Fed.R.Civ.P. § 12(c).

### FACTUAL BACKGROUND

A. *Work History*

Moffe was born on August 4, 1943, and is presently 55 years old. (T. 37). She has a high school education and additionally obtained her certification as a home health aide. (T. 37). From February of 1987 through September 9, 1994, she was, in fact, employed as a home health aide for elderly persons. (T. 115). As such, she had to handle and lift, when necessary, oxygen machines, hoyer lifts, and wheel chairs. (T. 122). She also had to lift and turn bedridden clients who weighed up to 200 pounds. (T. 123). She stopped working on September 9, 1994 because she claims she hurt her right arm, right shoulder, and neck from lifting a patient. (T. 42, 43, 160, 182).

From 1988 to 1989, Moffe also worked as a mailroom attendant. (T. 115). Her duties required her to lift bags of mail weighing from 50 to 60 pounds and trays of mail weighing from 25 to 30 pounds. (T. 50).

From June of 1985 to February of 1987, prior to being employed as a home health aide, Moffe worked as a housekeeping supervisor. (T. 115). This job required her to routinely lift items, including jugs of wax and jugs of stripper, weighing from 40 to 50 pounds. (T. 51). Her duties also required her to run a buffer and train others in its use. (T. 42).

B. *Medical Evidence*

Moffe has a history of fibromyalgia and depression. She was treated by Dr. J. Gregory Schultz, an internist, who examined her shortly after the date of her purported injury. (T. 185). Dr. Schultz, in a letter dated February 13, 1995, stated

as you know she sustained an injury to her arm while on the job in September of 1994. This clearly aggravated her underlying depression as the chronic pain from her arm seemed to become unbearable. She has continued to be virtually disabled because of the pain despite attempts at therapy through pain clinic, rheumatologic investigation, etc. We have attempted to treat her depression through changing medications. Initially this would seem successful, but the patient has followed up with counselors and still may not be doing that much better. My overall impression is that the patient's depression does repre-

sent a pre-existing condition and has been aggravated significantly by her arm disability. (T. 134).

Dr. Schultz referred her to Dr. James G. Freeman, with who treated her from July of 1994 to April of 1996. (T. 161, 198). Dr. Freeman initially diagnosed Moffe as suffering from fibromyalgia syndrome, although, based on a fairly high ANA "titre," he questioned whether the fibromyalgia was secondary to an underlying connective tissue disease. (T. 161, 162). Subsequently, Dr. Freeman concluded that Moffe was also suffering from persistent tendinitis of the right shoulder and fibrositis. (T. 149). Dr. Freeman's physical examination of Moffe showed well moving joints with no signs of synovitis or arthritis. (T. 162). His neurological examination was unremarkable, and neither an arthrogram of the right shoulder nor an MRI of the right upper extremity, which he ordered, revealed any abnormality. (T. 163, 164). However, a functional assessment by Dr. Freeman dated April 28, 1996, is consistent with Moffe's contention that she is disabled from her previous employment. (T. 200, 201).

From July of 1994 through April of 1996, Moffe was also treated by, psychotherapist Dr. Mila A. Meier. (T. 194). Dr. Meier concluded that the pain in the right shoulder area, reported by Moffe, was accentuated by stress and depression. (T. 194).

Dr. C. Curtis examined Moffe at the Occupational Health Services of St. Joseph's Hospital in October of 1994. (T. 181). He found that her right shoulder range of motion was essentially normal and noted that most of her symptoms "relate to general medical and depressive problems and not currently to the shoulder injury." (T. 181). He thought she could return to work with essentially no limitations with regard to the shoulder injury. (T. 181). He did diagnose fibrositis and depression. (T. 181).

Moffe was also treated by Dr. Mark Gibson from May of 1995 through July of 1995. While he found on physical examination that her right arm had a full range of motion and muscle strength and also noted that electrophysiological findings were normal, he did confirm the diagnosis of fibromyalgia syndrome. (T. 140–144).

Finally, Dr. Nevilla Manzano, a psychiatrist, performed a disability evaluation on Moffe on June 8, 1995. (T. 138). She diagnosed Moffe as suffering from depressive disorder and fibromyalgia. (T. 139).

## DISCUSSION

### A. The Standard of Review

 The issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. *See*, 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir., 1991). Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Therefore, the determination of the Commissioner is conclusive as long as it is supported by substantial evidence and is not based on legal error. *Arnone v. Bowen*, 882 F.2d 34, 37 (2d Cir., 1989).

### B. The Standard for Finding a Disability

A person is disabled when she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work, but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial work which exists in the national economy...." 42 U.S.C. § 423(d)(2)(A).

 The plaintiff bears the initial burden of showing that her impairments prevent her from returning to her previous type of em-

ployment. *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir., 1982). If such *prima facie* showing is made, the burden then shifts to the Commissioner to prove the existence of alternative substantial gainful activity in the national economy which the plaintiff is capable of performing. *Dumas v. Schweiker,* 712 F.2d 1545, 1551 (2d Cir., 1983).

In order to determine whether the plaintiff suffers from a disability, the ALJ employs a five-step inquiry: (1) whether the plaintiff is currently working; (2) whether the plaintiff suffers from a severe impairment; (3) whether the impairment is listed in Appendix 1 of the relevant regulation; (4) whether the impairment prevents the plaintiff from continuing her past relevant work; and (5) whether there is other work which the plaintiff could perform. 20 C.F.R. § 404.1520; *Berry,* 675 F.2d at 467. If a claimant is found to be either disabled or not disabled in any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. § 404.1520(a); *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir., 1992).

C. *The ALJ's Decision*

■ The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed. The Court disagrees. In his decision, the ALJ concluded that

> the claimant's impairments have not lasted a continuous 12 month durational period at that pinnacle of severity that would significantly limit her mental and physical ability to perform basic work related activities and that her impairments do not meet or equal the level of severity of any impairment contained in Appendix 1, Sub-part P of the Regulation # 4. (T. 16, 17).

This conclusion addresses step three of the required analysis, and necessarily reflects that the ALJ determined, pursuant to step two, that the plaintiff's impairment was severe. The ALJ then correctly moved to step four in the process, relating to the plaintiff's ability to perform past, relevant work.

In this regard, the ALJ determined that the plaintiff could perform the job of housekeeping supervisor, a position which she had previously held for five years. The ALJ

determined that this job fell within the category of "light work." However, "light work" is defined in the Commissioner's Regulations as follows:

> light work involves lifting no more than 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable to perform a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b). It is clear from the transcript that the lifting requirements of the plaintiff's past relevant job as a housekeeping supervisor exceeded those required for light work. Rather, the job of housekeeping supervisor, as developed in the record, involved lifting of up to 50 pounds, which would seem more consistent with "medium work." 20 C.F.R. § 404.1567(c). Therefore, the ALJ's conclusion that the plaintiff could perform the job of housekeeping supervisor was incorrect, and he should have proceeded to the fifth step of the inquiry and decided whether or not there was any other work that she could perform.

*CONCLUSION*

In reviewing disability claims, a District Court may affirm, modify, or reverse the determination of the Commissioner with or without remanding the case for a rehearing. 42 U.S.C. § 405(g). Since the ALJ's determination that the plaintiff could perform her past relevant work is inconsistent with the record before the Court, it cannot be said that the Commissioner's denial of disability benefits is supported by substantial evidence. Therefore, the Court hereby orders that the case be remanded to the Commissioner, pursuant to the fourth sentence of 42 U.S.C. § 405(g), for proceedings consistent with this decision.

IT IS SO ORDERED.